UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MISTY D. BRANUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:11-CV-351-TAV-CCS |
| | ) | |
| LOUDON COUNTY, TENNESSEE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 against Loudon County, Tennessee, Kimber Littleton, Individually, and Sheriff Tim Guider, in his official capacity. The Court has previously dismissed Plaintiff's claims against Sheriff Guider [Doc. 15], and Plaintiff has filed a notice of voluntary dismissal of her claims against Kimber Littleton [Doc. 42], leaving before the Court her claims against Loudon County.

This matter is before the Court on Defendant Loudon County's motion for summary judgment [Doc. 27]. Plaintiff has responded [Doc. 45]. The Court has carefully considered the motion and, for the reasons stated herein, finds that Defendant's motion for summary judgment should be granted.

## I. Background

On July 27, 2011, Plaintiff Misty Branum brought this cause of action under 42 U.S.C. § 1983 alleging the Defendants violated her constitutional rights. Her cause of

action stems from her allegation that Defendant Kimber Littleton[1], a jailer at the Loudon County Sheriff's Department sexually assaulted her while transporting her from the Blount County Jail to the Loudon County Jail on August 9, 2010 [Doc. 1].

On June 9, 2010, Plaintiff was arrested on an outstanding child support warrant. She was taken to the Loudon County Jail and ordered to serve consecutive 30-day sentences. She was eventually transferred to the Blount County Jail for service of her sentence. *Id.*

Plaintiff was released from the Blount County Jail in the early morning hours of August 9, 2010. Since she was technically in Loudon County custody, it was necessary for her to be transported back to Loudon County to be processed out of Loudon County's custody. *Id.*

Defendant Littleton retrieved Plaintiff from the Blount County Jail and transported her to Loudon County in his cruiser. *Id.* It is undisputed for the purposes of summary judgment that Defendant Littleton sexually assaulted Plaintiff during the transport from the Blount County Jail to the Loudon County Jail [Docs. 28, 45]. Littleton was indicted December 17, 2010 and pled guilty to sexual conduct with an inmate on January 7, 2013. The state court deferred his plea upon completion of a program of probation [Doc. 1].

Plaintiff asserts claims against Loudon County for failure to adequately supervise Officer Littleton and for failure to adequately train Officer Littleton. *Id.*

---

[1] Plaintiff has filed a notice of voluntary dismissal of her claims against Kimber Littleton. *See* Doc. 42.

In support of the motion for summary judgment, Loudon County has submitted the affidavit of Teresa Smith, Jail Administrator for the Loudon County Sheriff's Department [Doc. 30]. Smith states that Littleton was a jailer at the Loudon County Sheriff's Department from February 4, 2008, until he resigned September 16, 2010. Littleton had previously served as a reserve office for the Loudon County Sheriff's Department and also had experience as a security guard. Prior to becoming a jailer, Littleton had to file an application and list references. Smith states that a criminal background check was conducted for Littleton. *Id.*

Smith states that at the time of his employment, Littleton was provided with copies of the Policies and Procedures of the Loudon County Detention Facility, as well as the Employee Handbook provided to each jailer. Littleton was also required to watch a video in the Human Resources Department about what constitutes sexual harassment and its prohibition in the workplace. Littleton signed an Acknowledgement of Receipt and Understanding regarding the zero tolerance policy for workplace harassment on February 4, 2008. *Id.*

Littleton was a certified jailer having taken the 40 hours required by the Tennessee Corrections Institute for a regular full-time jailer during the first year of his employment. He also took 16 hours of in-service training each year thereafter as required by the State of Tennessee along with 24 hours of departmental training. *Id.*

3

Smith states that Littleton had no documented history of any sexual misconduct or sexual contact with inmates during his employment at the Loudon County Detention Facility or the Loudon County Sheriff's Department or any other agency until the allegations made by Plaintiff on September 14, 2010. Plaintiff filed an internal complaint with the Loudon County Sheriff's Department on September 14, 2010. Sheriff Guider suspended Littleton the same day pending a hearing to be conducted September 24, 2010. Littleton resigned his employment with Loudon County on September 16, 2010. *Id.*

In her response to Defendant's Statement of Material Facts, Plaintiff states she was told that an employee of the Sheriff's Department didn't like Littleton's interest in her, and that she needed to be transported out of the Loudon County Jail for her own safety. Plaintiff further asserts that she did not have any outstanding charges in Blount County and the only reason for the transfer to Blount County was because of the attention Littleton was giving her. Plaintiff further states that prior to the incident of sexual assault, Littleton had been reprimanded for several infractions of departmental policy.

## II. Standard of Review

Defendant's motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment. Rule 56(a) sets forth the standard for summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "a party asserting that a fact cannot be or is genuinely disputed must support the

4

assertion." This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co, v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). The "mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the court concludes a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Id.*

5

## III. Analysis

Plaintiff has brought this action against Loudon County pursuant to 42 U.S.C. § 1983. Section 1983 states in pertinent part:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 makes liable only those who, "while acting under color of state law, deprive another of a right secured by the Constitution or federal law." *Romanski v. Detroit Entertainment LLC,* 428 F.3d 629, 636 (6th Cir. 2005). To establish a claim pursuant to § 1983, a plaintiff must demonstrate two elements: (1) that she was deprived of a right secured by the Constitution or laws of the United States; and (2) that she was subjected or caused to be subjected to this deprivation by a person acting under color of state law. *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir. 2000). Section 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere. *Gardenhire v. Shelby County,* 205 F.3d 303, 310 (6th Cir. 2000). It is undisputed that Littleton was acting under color of state law, and that Plaintiff has a recognized right to bodily integrity which was well-established at the time of the alleged incident. *See Albright v. Oliver*, 510 U.S. 266 (1994) (The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity).

Plaintiff asserts that it was the unwritten policy of the Loudon County Sheriff's Department that led to the deprivation of her rights. Plaintiff argues that the Loudon County Sheriff's Department had a policy of overlooking improper behavior of its employees until they could no longer ignore the behavior. Plaintiff avers that Littleton was given a verbal reprimand on June 26, 2009 for failing to follow policy. On January 11, 2010, Littleton was given a written reprimand for various violations of policies from November 8, 2009 to December 11, 2010. Plaintiff argues that by ignoring Littleton's violations of policies over a six month period, Loudon County acquiesced in, and in effect ratified, his behavior. Plaintiff further argues that the only reason she was sent to Blount County was because of Littleton's attraction to her. However, despite being transferred to Blount County for "her own safety," Littleton was sent to pick her up and transport her back to Loudon County. It was during this transfer that the sexual assault occurred.

Defendant responds that Littleton's prior disciplinary actions included a failure to check for outstanding warrants; failure to secure money in a lockbox; closing the sallyport door on a County cruiser; failure to timely release an inmate from custody; and placing an inmate's medication in the property bin. None of these disciplinary actions would put Loudon County on notice that Littleton would commit a sexual assault upon an inmate. Thus, no respondeat superior liability can attach to Loudon County under either the failure to train or failure to supervise theories.

There is no question in this case that Plaintiff has alleged facts which support a claim of a constitutional violation and injury against Littleton. However, Plaintiff cannot rely on respondeat superior liability to hold Loudon County liable under § 1983. *See Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658 (1988). Rather, under *Monell* and its progeny, "a city may be held liable only (1) when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury, and (2) when there is an affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985). Plaintiff must establish that Loudon County's official policies or customs (or lack thereof) were a "moving force" behind the deprivation of her rights and arose as a result of "deliberate indifference" to her rights. *See Doe v. Claiborne County,* 103 F.3d 495, 508 (6th Cir. 1996).

In order to impose municipal liability, a plaintiff must identify the municipal policy or custom that caused her injury. *Ford v. County of Grand Traverse,* 535 F.3d 483, 495 (6th Cir. 2008). Identifying a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Id.* Once the policy is identified, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link

between the municipal action and the deprivation of federal rights." *Bd. Of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). The Sixth Circuit has stated:

> The key inquiry thus becomes whether, in viewing the County's policy in the light most favorable to [plaintiff], there was sufficient evidence for reasonable minds to find "a direct causal link" between the County's policy and the alleged denial of [plaintiff]'s rights . . . . *See e.g., Blackmore v. Kalamazoo County,* 390 f.3d 890, 900 (6th Cir. 2004) ("A municipality can be liable under 42 U.S.C. § 1983 only if the plaintiff can demonstrate that his civil rights have been violated as a direct result of that municipality's policy or custom.") citing *Monell*, 436 U.S. at 694; *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993) ("to satisfy the Monell requirement, a plaintiff must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.")

*Ford*, 535 F.3d at 497.

Plaintiff does not argue that Loudon County has a custom of allowing sexual assaults by its officers or that the County lacks a policy prohibiting criminal behavior by its officers. Instead, Plaintiff contends that the constitutional violation chargeable to Loudon County arises from its failure to train its officers and/or failure to properly supervise its officers.

### A.    Failure to Train

Plaintiff asserts that had the Loudon County Sheriff's Department properly trained and supervised Littleton, the violation of her civil rights would not have taken place. Had Loudon County not sent her to Blount County, or prohibited Littleton from picking her up for transfer, the violation of her rights would not have occurred. Plaintiff argues that Loudon County cannot be absolved of liability by stating that it took corrective measures

after the offending action, and that the County should have had the proper procedures and practices in place to prevent it.

In *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court held that:

> The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact . . . . Only where a failure to trains reflects a "deliberate" or "conscious" choice by a municipality – a "policy" as defined by our prior cases – can a city be liable for such a failure under § 1983.

*Id.* at 388. Citing *City of Canton,* the Sixth Circuit held in *Russo v. City of Cincinnati,* 953 F.3d 1036 (6th Cir. 1992) that "to establish liability under C*ity of Canton,* the plaintiff must prove . . . that the training program at issue is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Id.* at 1046. In *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.,* the Sixth Circuit identified two instances in which a finding of deliberate indifference will be appropriate: "(1) where the training lapse occurred despite foreseeable consequences that will flow from the lapse; and (2) where the training lapse occurs despite repeated complaints to the municipality about the issues that should have been dealt with in training." *Id.,* 455 F.3d 690, 700-01(6th Cir. 2006). Under the *Ellis* standard, Plaintiff must show that Littleton received inadequate training and/or the County received repeated complaints concerning sexual contact with inmates. It is not enough for a plaintiff "to show that her injury could have been avoided if the officer had more or better training." *Mayo v. Macomb County,* 183 F.3d 554, 558 (6th Cir. 1999).

10

In order to succeed on such a claim, Plaintiff must show that the inadequacy of Loudon County's training program was the result of deliberate indifference and that inadequacy is closely related to or actually caused the sexual assault. *Russo,* 953 F.2d at 1046. Even viewing the facts in a light most favorable to Plaintiff, she cannot meet this standard. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. Of County Comm'rs,* 520 U.S. at 410.

In a failure to train claim, the focus of the Court's inquiry is on the training program. As the Supreme Court explained in *City of Canton*:

> In resolving the issue of a [county's] liability, the focus must be on the adequacy of the training program in relation to the task the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [county], for the officers shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and reoccurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable. . . .
>
> To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983, and virtually every instance where a person has his or her constitutional rights violated by a [county] employee, a § 1983 plaintiff will be able to point to something the [county] could have done to prevent the unfortunate incident. Thus, permitting cases against [counties] for their failure to train employees under § 1983 on the lesser standard of fault would result in a de facto respondeat superior liability on municipalities – a result we rejected in *Monell,* but would also

11

> engage the federal courts in an endless record exercise of second-guessing [county] employee training programs.

*City of Canton*, 489 U.S. at 390-91. Loudon County may not be held liable under § 1983 strictly because it employed an alleged tortfeasor as there is no respondeat superior liability. *Brown*, 520 U.S. at 404. "It is when the execution of the government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible." *Monell*, 436 U.S. at 694.

Here, Defendant has submitted evidence from Teresa Smith, Jail Administrator for the Loudon County Sheriff's Department showing that Littleton was hired as a jailer in February 2008. He had previously served in the reserve unit of the Loudon County Sheriff's Department. Littleton was provided with a Policy and Procedure Manual, and Employee Handbook. Littleton signed and acknowledged various forms indicating that he understood the policies of the Loudon County Sheriff's Department prohibiting sexual harassment. Littleton received an initial 40 hours of jail training, and he obtained his certification as a jailer. He also received 16 hours of in-service training each year as required for jailers under Tennessee law. Loudon County had no history of complaints from any inmates about Littleton ever having engaged in sexual conduct with an inmate prior to Plaintiff's complaint.

Federal courts addressing similar claims have uniformly held that a single act of sexual misconduct by a police officer cannot form the basis of municipal liability under a failure to train theory. The Court must apply "rigorous standards of culpability and

causation" to justify liability on the defendant municipal entity. *Bd. Of County Cmm'rs of Bryan County v. Brown,* 520 U.S. 397, 405 (1997). In addition, courts presented with similar complaints of sexual assault have uniformly found that training or its absence does not cause the plaintiff's injuries. In *Barney v. Pulsipher,* 143 F.3d 1299 (10th Cir. 1998), female jail inmates brought a § 1983 action alleging rape by jailers. The Tenth Circuit first concluded that there was no evidence the county knew of a pattern of violations and that there was no evidence the jail training programs were inadequate. The court also wrote "we are not persuaded that a plainly obvious consequence of deficient training would be the sexual assault of inmates. Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior." *Id.* at 1308.

Similarly, in *Andrews v. Fowler,* 98 F.3d 1069 (8th Cir. 1996), the Eighth Circuit found: "In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women. Moreover, even if the training was in some manner deficient, the identified deficiency in a city's training program must be closely related to the ultimate injury such that the deficiency in training actually caused the police officers' offending conduct." *See also Floyd v. Waiters,* 133 F.3d 786 (11th Cir. 1998); *Sewell v. Town of Lake Hamilton,* 117 F.3d 488 (11th Cir. 1997). "The proper course of conduct – refraining from sexual assault and rape – is patent and obvious; structured training programs are not required to instill it. Consequently, the absence of such programs (even

13

if such absence was proven) is not so likely to cause improper conduct so as to justify a finding of liability." *Williams v. Bd. Of County Comm'rs of Unified Govt of Wyandotte Cty.,* 2000 WL 1375267 (D. Kan. Aug. 30, 2000) (cited with approval in *Oliver v. City of Berkley,* 261 F. Supp. 2d 870 (E.D. Mich. 2003); *see also Lewis v. Pugh,* 2007 WL 1394145 (E.D. Tex. May 11, 2007) ("Indeed it hardly seems necessary that an officer would require specific training to know that rape, sexual assault, and other blatantly criminal actions are inappropriate"); *Breland v,. City of Centerville, Ga.,* 2008 WL 2233595 (M.D. Ga. May 28, 2008) ("No training is required to teach police officers not to commit sexual assaults. Sexual assault is illegal, and police officers can reasonably be expected to know, without training, that they are not allowed to take sexual advantage of their prisoners").

Accordingly, and given the reasoning as expressed in the foregoing line of cases, Loudon County is granted summary judgment on Plaintiff's claim based on inadequate training.

### B. Failure to Supervise

In order to impose liability on a failure to supervise theory, "the risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be plainly obvious." *Gregory v. City of Louisville,* 444 F.3d 725, 752 (6th Cir. 2006). Plaintiff states that the reason she was transferred to Blount County was because Littleton's ex-wife, a deputy at Loudon County, thought that he was interested in her, and she was told she was sent to Blount County for her own safety. Plaintiff asserts Loudon

County should not have allowed Littleton to transport her from Blount County under these circumstances. Had Loudon County properly supervised Littleton, the sexual assault would not have taken place. Had Loudon County not sent her to Blount County, or prohibited Littleton from picking her up for transfer, the violation of her rights would not have occurred.

Plaintiff has not supported her allegations with any deposition testimony or written affidavits from the individuals who allegedly told her the reason for her transfer. Plaintiff's statements concerning what she was told by third parties concerning the reason for her transfer from Loudon County to Blount County are based on hearsay. The Court cannot consider inadmissible hearsay in an affidavit when ruling on a summary judgment motion. *See North Amer. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997). Hearsay is a statement "the declarant does not make while testifying at the current trial or hearing, and that a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). The burden of proving that the statement fits squarely within a hearsay exception rests with the proponent of the hearsay exception, here, the Plaintiff. *United States v. Arnold,* 486 F.3d 177, 206 (6th Cir. 2007). Affidavits of hearsay and opinion evidence do not satisfy Rule 56(e) and must be disregarded. *State Mut. Life Assur. Co. of Amer. v. Deer Creek Park,* 612 F.2d 259, 264 (6th Cir. 1979). Plaintiff does not attempt to justify any of her statements under exceptions to the hearsay rule. Thus, the Court finds that the above statements are inadmissible as hearsay not subject to any exemption or exception, and that Plaintiff has

15

failed to show that she could or would produce admissible evidence at trial supporting the allegations made in the inadmissible portions of her Declaration. Therefore, Plaintiff's statements concerning the reason for her transfer to Blount County are hearsay and are stricken.

Plaintiff argues that there are genuine issues of material fact as to whether Loudon County was complacent in Littleton's continued violation of department policy, thereby ratifying his behavior and creating an unwritten policy which was the moving force behind her deprivation of rights. Plaintiff asserts that Loudon County was put on notice that Littleton was not above breaking the law, or disregarding rules or policies as evidenced by the disciplinary actions taken against him.

The record shows that all prior discipline issued to Littleton was for unrelated violations of the Detention Facilities Policies and Procedures (failure to check for outstanding warrants; failure to secure money in a lockbox; closing the sallyport door on a County cruiser; failure to timely release an inmate from custody; and placing an inmate's medication in the property bin). Plaintiff has produced no evidence that demonstrates a pattern of similar sexual offenses by Littleton prior to August 9, 2010 that would support a finding that Loudon County deliberately ignored a risk that Littleton might engage in sexual misconduct while on duty. The evidence indicates that Plaintiff's complaint of sexual assault was the first complaint of its type received by Loudon County against Littleton. "A municipality or supervisor must have notice of a pattern of similar violations and the officer's prior conduct must actually point to the specific violation in

16

question." *Davis v. City or North Richland Hills,* 406 F.3d 375, 381 (5th Cir. 2005). In this case, there is no evidence that Littleton previously engaged in any conduct that is sufficiently similar to sexual assault prior to August 2010, much less that Loudon County could have been aware prior to that date of a propensity on the part of Littleton to engage in such conduct.

Moreover, it does not follow that it was inevitable that Littleton would sexually assault Plaintiff based upon his work, personal history, and his employment as a jailer at Loudon County. There is no admissible evidence creating a triable issue of fact that the plainly obvious result of a lack of supervision would be a sexual assault. Being able to prove opportunity is not the same thing as being able to prove that the County's lack of supervision was a "moving force" behind the deprivation of Plaintiff's rights and arose as a result of "deliberate indifference" to her rights. *See Doe,* 103 F.3d at 508. The link between the County's alleged lack of supervision and Plaintiff's sexual assault is too tenuous to allow this case to proceed to trial against Loudon County as the Supreme Court has specifically cautioned against imposing municipal liability in such cases. *See City of Canton,* 489 U.S. at 391 ("To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident").

The record shows that Plaintiff filed a complaint with the Loudon County Sheriff's Department against Littleton on September 14, 2010. Little was suspended that same day by Sheriff Guider, and Littleton resigned on September 16, 2010. Littleton was subsequently indicted for one count of having sexual contact with inmates on December 17, 2010, to which he pled guilty on January 7, 2013.

Plaintiff has produced no facts showing that Loudon County did not fully cooperate with Littleton's investigation, or that the Sheriff's Department attempted to thwart the investigation in any way. The Loudon County Employee Handbook prohibits sexual harassment. In addition, Littleton received training as to what constitutes sexual harassment, and why it is illegal under state and federal law. Littleton signed an Acknowledgement of Receipt and Understanding regarding the zero tolerance policy for workplace harassment at the Sheriff's Department.

In sum, Plaintiff cannot show the required "widespread pattern of constitutional violations such that the County's actions or inactions amounted to a deliberate indifference to the danger" of Littleton sexually assaulting her. *Doe v. Claiborne County,* 103 F.3d at 513. Nor can Plaintiff show that Loudon County "authorized, approved or knowingly acquiesced" in Littleton's unconstitutional conduct, or that "the risk of a constitutional violation arising as a result of the County's failure to supervise Littleton was plainly obvious." *Gregory*, 444 F.3d at 752. Accordingly, Loudon County is granted summary judgment on Plaintiff's claim based on a failure to supervise Littleton.

## C.     State Law Claims (Tennessee Governmental Tort Liability Act)

Loudon County's liability for torts committed by its employees and agents is governed by the Tennessee Governmental Tort Liabilities Act (TGTLA), Tenn. Code Ann. §§ 29-20-101 through 29-20-407. The TGTLA codifies the Tennessee common law rule of sovereign immunity for counties, municipalities, and other governmental entities. Tenn. Code Ann. § 29-20-201; *Limbaugh v. Coffee Med. Ctr.,* 59 S.W.3d 73, 79 (Tenn. 2001); *Baines v. Wilson County*, 86 S.W.3d 575, 578 (Tenn. Ct. App. 2002). The TGTLA affirms that municipalities in Tennessee are immune from suit with certain exceptions or waivers set forth in the TGTLA. *Doyle v. Frost,* 49 S.W.3d 853, 857 (Tenn. 2001). The limited waiver of sovereign immunity in the TGTLA is in derogation of Tennessee common law and must be strictly construed. *Limbaugh,* 59 S.W.3d at 83; *Doyle,* 49 S.W.3d at 858.

Under the TGTLA, Loudon County is generally subject to suit for civil claims sounding in negligence with certain enumerated exceptions. *Limbaugh,* 59 S.W.3d at 79; *Doyle,* 49 S.W.3d at 858. Tenn. Code Ann. § 29-20-205 provides in pertinent part that immunity from suit of all governmental entities is removed (waived) "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment, except if the injury arises out of . . . (2) false imprisonment pursuant to a mittimus from a court . . . infliction of mental anguish . . . or civil rights." Thus, Loudon County has immunity from suit under the TGTLA for negligent acts or omissions of its

employees if the injury arises out of the torts specified in Tenn. Code Ann. § 29-20-205(2). *Limbaugh,* 59 S.W.3d at 83.

Tenn. Code Ann. § 29-20-310(a) of the TGTLA provides that before a Tennessee governmental entity may be held liable in civil damages, a court must determine: (1) the acts of the governmental employee were negligent and were the proximate cause of the plaintiff's injury; (2) the employee was acting within the scope of his employment; and (3) none of the exceptions provided in Tenn. Code Ann. § 29-20-205 apply. Section 29-20-205 removes or waives a county's immunity from suit for injury proximately caused by a negligent act or omission of a county employee committed within the scope of his employment with certain exceptions. False imprisonment, intentional infliction of emotional distress[2], and assault and battery are intentional torts that do not sound in negligence. Under the TGTLA, § 29-20-205, a county cannot be held liable for negligence based merely on the alleged commission of intentional torts by an employee. A county has immunity from suit under the TGTLA unless a plaintiff can prove that the county committed a negligent act or omission which proximately caused her injuries. For Plaintiff to prevail on her claim seeking to hold Loudon County liable for the intentional torts allegedly committed by Littleton, she is required to prove that an independent act of negligence by Loudon County or a County employee proximately caused the intentional torts that resulted in her injuries. *Baines,* 86 S.W.3d at 580. On this question, Loudon

---

[2] The phrase "infliction of mental anguish" includes the tort of intentional infliction of emotional distress. *Sallee v. Barrell*, 171 S.W.3d 822, 829 (Tenn. 2005).

County's liability for negligence under § 29-20-205, there are no genuine issues of material fact in dispute and Loudon County is entitled to summary judgment in its favor.

As stated above, there is no proof in the record showing that Loudon County was negligent in training or supervising Littleton. There is no proof that Loudon County, or one of its employees or agents, committed an independent negligent act or omission that proximately caused the intentional torts (assault and battery, intentional infliction of emotional distress) that resulted in Plaintiff's injuries. Accordingly, Loudon County is entitled to summary judgment on Plaintiff's claims for assault and battery, and intentional infliction of emotional distress.

In the alternative, there is a different reason why Plaintiff's claims against Loudon County for assault and battery, and intentional infliction of emotional distress should be dismissed. These torts are alleged to have been committed solely in the context of the violation of Plaintiff's civil rights – this is in essence a civil rights suit.

Tenn. Code Ann. § 29-20-205(2) provides that immunity from suit of all governmental entities is removed or waived for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of "civil rights." It is fair and reasonable to interpret the plain language in § 29-20-205(2) as meaning that civil rights claims are a type of intentional tort. *Brooks v. Sevier County,* 279 F. Supp. 2d 954, 960 (E.D. Tenn. 2003). This Court construes the term "civil rights" in § 29-20-205(2) as meaning and including claims arising under the federal civil rights laws, *e.g.,* 42 U.S.C. § 1983 and the United States Constitution.

Plaintiff's tort claims of assault and battery, and intentional infliction of emotional distress brought under Tennessee law are predicated on the alleged violation of her civil rights by Littleton.  The contention that Littleton committed assault and battery, and intentional infliction of emotional distress clearly arise out of and directly flow from the allegations that he deprived Plaintiff of her civil rights by sexually assaulting her. Because Plaintiff asserts her claims against Loudon County in the context of a civil rights case, her alleged injuries arise out of "civil rights" and Loudon County is entitled to immunity from suit on these claims pursuant to the "civil rights" exception in Tenn. Code Ann. § 29-20-205(2).

Plaintiff also seeks to impose liability on Loudon County under Tenn. Code. Ann. §8-8-302.  However, the Court has already rejected Plaintiff's claim in its Memorandum and Order dismissing Sheriff Guider as a defendant in this action:

> Last, Tenn. Code Ann. § 8-8-302 provides that "anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may being suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue of or under color of the office."  It appears that plaintiff is attempting to use this state statute to impose liability on Loudon County in a form of respondeat superior liability.  The Sixth Circuit Court of Appeals in *Siler v. Webber,* 443 Fed. Appx. 50 (6th Cir. Aug. 22, 2011), held that Tenn. Code Ann. § 8-8-302 conflicts with the § 1983 prohibition on vicarious municipal liability, and may not be used to maintain a federal action.  *Id.* at *3, quoting *Palmer v. Sanderson,* 9 F.3d 1433, 1438 (9th Cir. 1993) (holding that, after *Monell,* a state statute imposing vicarious liability on a sheriff for the conduct of his or her deputies is inconsistent with the laws of the United States, and thus may not be applied in a § 1983 action).

22

[Doc. 15, p.3]. Accordingly, Plaintiff's claim under the statute is impermissible, and Loudon County is **GRANTED** summary judgment on Plaintiff's claim under Tenn. Code Ann. § 8-8-302.

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** Defendant Loudon County's motion for summary judgment [Doc. 27] and this case is **DISMISSED.**

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE